**In re PRI AUTOMATION, INC. SECURITIES LITIGATION**

**No. CIV. A. 00–12398–REK.**

United States District Court,
D. Massachusetts.

June 15, 2001.

Deborah Clarke-Weintraub, Gerald Gardener, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York City, Robert M. Roseman, Spector & Roseman, Philadelphia, PA, Stephen Moulton, Nancy F. Gans, Moulton & Gans, LLP, Boston, MA, for Plaintiff.

John H. Henn, Peter M. Casey, Christian M. Hoffman, Foley, Hoag & Eliot, Boston, MA, for Defendant.

## MEMORANDUM IN EXPLANATION AND PRACTICE AND PROCEDURE ORDER NO. 1

KEETON, District Judge.

### I. Filings

Relevant to the matters pending for decision are the following filings:

(1) The Nomanbhoy Group's Motion for Appointment as Lead Plaintiffs and for Approval of Their Selection of Lead and Liaison Counsel (Docket No. 11, filed January 19, 2001 in Civil Action No. 00–12398–REK; Docket No. 11, filed in Civil Action No. 00–12414–REK; Docket No. 11, filed in Civil Action No. 00–12628–REK; Docket No. 11, filed in Civil Action No. 00–12637–REK; and Docket No. 2, filed in Civil Action No. 01–10072–REK) with Memorandum of Law in Support (Docket No. 12, filed January 19, 2001 in Civil Action No. 00–12398–REK; Docket No. 12, filed in Civil Action No. 00–12414–

REK; Docket No. 12, filed in Civil Action No. 00–12628–REK; Docket No. 12, filed in Civil Action No. 00–12637–REK; and Docket No. 3, filed in Civil Action No. 01–10072–REK) and Declaration of Samuel H. Rudman (Docket No. 16, filed January 19, 2001 in Civil Action No. 00–12398–REK; Docket No. 16, filed in Civil Action No. 00–12414–REK; Docket No. 16, filed in Civil Action No. 00–12628–REK; Docket No. 16, filed in Civil Action No. 00–12637–REK; and Docket No. 7, filed in Civil Action No. 01–10072–REK);

(2) Proposed PRI Lead Plaintiffs' Motion for Consolidation (Docket No. 14, filed January 19, 2001 in Civil Action No. 00–12398–REK; Docket No. 14, filed in Civil Action No. 00–12414–REK; Docket No. 14, filed in Civil Action No. 00–12628–REK; Docket No. 14, filed in Civil Action No. 00–12637–REK; and Docket No. 5, filed in Civil Action No. 01–10072–REK) with Memorandum of Law in Support (Docket No. 15, filed January 19, 2001 in Civil Action No. 00–12398–REK; Docket No. 15, filed in Civil Action No. 00–12414–REK; Docket No. 15, filed in Civil Action No. 00–12628–REK; Docket No. 15, filed in Civil Action No. 00–12637–REK; and Docket No. 6, filed in Civil Action No. 01–10072–REK);

(3) Defendants' Memorandum in Response or Opposition to the "Nomanbhoy Group's" Motion for Appointment as Lead Plaintiff (Docket No. 18, filed February 2, 2001 in Civil Action No. 00–12398–REK; Docket No. 18, filed in Civil Action No. 00–12414–REK; Docket No. 18, filed in Civil Action No. 00–12628–REK; Docket No. 18, filed in Civil Action No. 00–12637–REK; and Docket No. 13, filed in Civil Action No. 01–10072–REK);

(4) Plaintiffs' Memorandum of Law in Reply to Defendants' "Response or Opposition" to the Nomanbhoy Group's Motion for Appointment as Lead Plaintiff (Docket No. 20, filed February 21, 2001 in Civil Action No. 00–12398–REK; Docket No. 20, filed in Civil Action No. 00–12414–REK; Docket No. 20, filed in Civil Action No. 00–12628–REK; Docket No. 19, filed in Civil Action No. 00–12637–REK; and Docket No. 18, filed in Civil Action No. 01–10072–REK);

(5) Letter from Office of General Counsel, United States Securities and Exchange Commission, dated March 23, 2001 (Docket No. 30, filed March 26, 2001 in Civil Action No. 00–12398–REK);

(6) Defendants' Memorandum Concerning Questions Set Forth in This Court's Order of February 22, 2001 (Docket No. 31, filed March 27, 2001 in Civil Action No. 00–12398–REK; Docket No. 19, filed in Civil Action No. 00–12414–REK; Docket No. 19, filed in Civil Action No. 00–12628–REK; Docket No. 20, filed in Civil Action No. 00–12637–REK; and Docket No. 19, filed in Civil Action No. 01–10072–REK);

(7) Letter by Defendants' Counsel, John H. Henn, dated May 7, 2001 (Docket No. 34, filed May 8, 2001 in Civil Action No. 00–12398–REK);

(8) Plaintiffs' Memorandum Concerning Questions Raised in Court's Memorandum and Order Dated February 22, 2001 (Docket No. 35, filed May 21, 2001 in Civil Action No. 00–12398–REK; Docket No. 21, filed in Civil Action No. 00–12414–REK; Docket No. 21, filed in Civil Action No. 00–12628–REK; Docket No. 21, filed in Civil Action No. 00–12637–REK; and Docket No. 20, filed in Civil Action No. 01–10072–REK); and

(9) Comments Concerning Questions Set Forth in the Court's Order of February 22, 2001 submitted by member of the Bar of this court, Loretta M. Smith (Docket No. 36, filed May 18, 2001 in Civil Action No. 00–12398–REK).

## II. Consolidation

Plaintiffs request that this court consolidate Civil Action Nos. 00–12398–REK, 00–12414–REK, 00–12628–REK, 00–12637–REK, and 01–10072–REK, under Federal Rule of Civil Procedure 42(a). That rule declares:

(a) Consolidation. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a).

■ In determining whether to order consolidation, the court must first determine whether the two proceedings involve a common party and common issues of fact or law. Once this determination has been made, the court has "broad discretion in weighing the costs and benefits of consolidation to decide whether that procedure is appropriate." *Seguro de Servicio de Salud de Puerto Rico v. McAuto Systems Group, Inc.,* 878 F.2d 5, 8 (1st Cir.1989). If those first two steps are resolved in favor of consolidation, the motion to consolidate ordinarily will be granted unless the opposing party shows "demonstrable prejudice." *See id.* (quoting *Lavino Shipping Co. v. Santa Cecilia Co.,* 1972 A.M.C. 2454, 2456 (S.D.N.Y.)).

■ No opposition to Plaintiffs' request exists in the record now before me. The complaint filed in each of these five cases is in essence the same complaint, including the same named defendants and the same allegations in support of the claims. Only the named plaintiffs differ. I determine that substantial benefits will accrue from consolidation. Interests in fair and efficient adjudication on the merits without wasteful duplicative proceedings will be better served in consolidated than in separate proceedings.

For these reasons and for the reasons stated in the Case Management Conference held on February 22, 2001, I determine that an order consolidating the five actions listed above is appropriate. Plaintiffs' Motion to Consolidate is ALLOWED in Practice and Procedure Order No. 1 below.

## III. The Order Following the Case Management Conference of February 22, 2001

On February 22, 2001, this court held a Case Management Conference after which the court issued its Memorandum and Order of February 22, 2001 stating:

### I.

.    .    .    .    .

The foregoing filings in this case, and related filings in other cases drawn to me under the practices of the Clerk of the United States District Court for the District of Massachusetts and the Local Rules of this court involve, among various other legal and factual issues not common to all these cases, an issue of constitutionality of at least one and perhaps more of the provisions of the Private Securities Litigation Reform Act, Pub.L. No. 104–67, 109 Stat. 737 (PSLRA).

One provision of this Act declares that a district court must, within 90 days after a selected date (which may be the date of filing of the civil action), designate a class representative for class action claims, who will have the responsibility for selecting and instructing an attorney or law firm to represent the class.

## II.

Is the Private Securities Litigation Reform Act unconstitutional insofar as it purports to place on a district court the duty to select an appropriate class representative, who will then select an attorney or firm of attorneys to represent the class?

Would the act of a district judge in selecting a class representative capable of controlling the attorney or firm of attorneys to represent the class be an act of advocacy (potentially favoring some class members over others, or favoring plaintiffs over defendants or defendants over plaintiffs) that is in fundamental conflict with the role of the judiciary in the American legal system?

## III.

Is assigning responsibility to a district court to instruct a nonlawyer to control the advocacy of a lawyer unconstitutional, on due process or other grounds, not only because these statutory provisions impose a nonjudicial duty on a court of the Third Branch but also because they are inconsistent with the role of an independent Bar?

Is a Bar that is independent in significant respects, even though its members are subject to some constraints incident to being officers of the court, a key characteristic of the American legal system?

## IV.

Is the 90–day provision of the PSLRA an unconstitutional intrusion on the judicial functions of a United States district court in which this provision is invoked and might be invoked by any of the parties to a civil action before the court?

## V.

Should this court issue an interlocutory Declaratory Order declaring selected provisions of the Act unconstitutional on the foregoing grounds?

## VI.

Before deciding how to answer the question stated in Part V, the court will invite the parties, and any interested member of the Bar of this Court as friend of the court, to make recommendations on how the court should answer the questions stated in Parts II–V of this Memorandum and how the court should proceed to move forward, to appropriate disposition, all of the cases before the court that involve the questions of law stated in Parts II, III, and IV above?

Memorandum and Order, February 22, 2001, Docket No. 22 at 1–4.

## VII.  A Submission from the United States Securities and Exchange Commission

In addition to receiving Defendants' Memorandum Concerning Questions Set Forth in This Court's Order of February 22, 2001 (Docket No. 31, filed March 27, 2001 in Civil Action No. 00–12398–REK), on March 26, 2001, the court received a letter signed by Eric Summergrad, Deputy Solicitor, Office of the General Counsel, United States Securities and Exchange Commission (Docket No. 30).  This letter to the court states:

We have been informed of your Honor's February 22, 2001 order in this case, which poses a series of questions about the constitutionality of the lead plaintiff provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. 78u–4(a).  We understand that the Court intends to take up these questions at a March 28 hearing and has

invited "any interested member of the Bar of the Court as friend of the court" to "make recommendations on how the court should answer the questions." The Commission has not had sufficient time to study the issues posed by your Honor, and thus is not in a position to comment on them at this time.

We also note that under 28 U.S.C. § 2403(a), in any case in federal court "to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene * * *" as a party to address the issue. It is our understanding that this has not been done in this case, but we assume it will be before the Court considers ruling on these issues. We respectfully request that should your Honor so certify the matter to the Attorney General, the Commission be informed of that fact.

Although we are not addressing the constitutional issues at this time, we do wish to provide the Court with a prior brief filed by the Commission, in the case *In re Moore*, No. 00–70006 (9th Cir. filed Feb. 29, 2000), which reflects the Commission's understanding of the Reform Act's lead plaintiff provisions themselves.

As discussed in the *Moore* brief (at 2–4, 10–17), the Act contemplates that the lead plaintiff will act as an additional safeguard of the interests of the class, beyond those fundamental Rule 23 safeguards necessary to maintain the class action. Under the Act, the lead plaintiff selects and retains counsel with the court's approval and actively oversees the conduct of the litigation and monitors the effectiveness of that counsel for the protection of the class. The brief (at

2–4, 18–25) urges district courts ·to take care, in applying the Act's criteria for appointment of lead plaintiff, including its "group of persons" language, that a lead plaintiff candidate can perform that role. Furthermore, it notes (at 21–22) that this role of the lead plaintiff is a function that many courts have expected lead plaintiffs to perform and which, to some extent, courts have traditionally considered, even prior to the Act, when evaluating proposed class representatives under Rule 23.

Docket No. 30 at 1–2.

## VIII. Proceedings During and After the Case Management Conference of March 28, 2001

On March 28, 2001, the court held another Case Management Conference at which the court did not make any decisions on the constitutional issues discussed above but instead recessed the hearing until May 22, 2001. The court issued a Memorandum and Order dated March 30, 2001, which provides:

At the hearing held on March 28, 2001, the court did not rule on the constitutional issues raised in the Memorandum and Order of February 22, 2001 (Docket No. 22). Instead, the court recessed the hearing until a date far enough into the future to allow for notifying the Attorney General of the United States so that his designee may have an opportunity to be heard orally in court before the court decides any of the constitutional issues presented in this case.

Under the applicable statute:

In any action, suit ·or proceeding in a court of the United States to which the United States or any agency, officer or employee thereof is not a party, wherein the constitutionality of any

Act of Congress affecting the public interest is drawn in question, the court shall certify such fact to the Attorney General, and shall permit the United States to intervene for presentation of evidence, if evidence is otherwise admissible in the case, and for argument on the question of constitutionality. The United States shall, subject to the applicable provisions of law, have all the rights of a party and be subject to all liabilities of a party as to court costs to the extent necessary for a proper presentation of the facts and law relating to the question of constitutionality.

28 U.S.C. § 2403(a).

One of the provisions of the Private Securities Litigation Reform Act declares that a district court must, within 90 days after a selected date (which may be the date of filing of the civil action), designate a class representative for class action claims, who will have the responsibility for selecting and instructing an attorney or law firm to represent the class. *See* 15 U.S.C. § 78u—4(a)(3)(B). It is the constitutionality of this provision that has been called into question. *See Chan v. PRI Automation, Inc.*, 2001 WL 263258, at *1–2 (D.Mass. Feb. 22, 2001).

Because of the questions raised, and because the Attorney General of the United States must have an opportunity to be heard, it will not be possible to comply literally with the Congressional mandate. I will, however, allow a reasonable time before resuming the hearing so that the Attorney General of the United States, or his designee, has the opportunity to file any submissions and to be heard on the issues. In order to come as close as possible to complying with the Congressional mandate and yet allow a reasonable time for all interested parties to be heard, I will resume the hearing at noon on May 22, 2001. In the Order below, I certify these questions to the Attorney General of the United States and notify the United States Securities and Exchange Commission of my decision.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) The hearing of March 28, 2001, is in recess until noon on May 22, 2001.

(2) I certify to the Attorney General of the United States that the constitutionality of an Act of Congress affecting the public interest is drawn into question in this proceeding for the reasons explained in the Memorandum and Order of February 22, 2001, in this case.

(3) The Clerk will notify the United States Securities and Exchange Commission, as well as the Attorney General of the United States, of this certification.

Docket No. 32 at 1–3.

Before the next Case Management Conference the court received a letter from Defendants' counsel (Docket No. 34) supplementing his previous filing (Docket No. 31), Plaintiffs' Memorandum Concerning Questions Raised in Court's Memorandum and Order Dated February 22, 2001 (Docket No. 35), and a brief entitled, "Comments Concerning Questions Set Forth in the Court's Order of February 22, 2001," submitted by a member of the Bar of this court, Loretta M. Smith (Docket No. 36).

### IX. Hearing of May 22, 2001

At the Case Management Conference held May 22, 2001, the court heard oral arguments on the issues of constitutionality raised by the court in its Memorandum and Order dated February 22, 2001, and on The Nomanbhoy Group's Motion for Appointment as Lead Plaintiffs and for

Approval of Their Selection of Lead and Liaison Counsel (Docket No. 11). No one representing the United States Securities and Exchange Commission or the Attorney General of the United States attended the Case Management Conference.

## X. Unconstitutionality of the Ninety–Day Provision

■ After considering the submissions of the parties, the Securities and Exchange Commission, and a Member of the Bar of this court, and after hearing oral arguments at the Case Management Conference held May 22, 2001, I conclude that the 90–day provision of the PSLRA is an unconstitutional intrusion on the judicial functions of a United States District Court.

The case most often cited to me by the interested parties in arguing against the conclusion I have reached is *Miller v. French*, 530 U.S. 327, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). The submissions suggest that *Miller* stands for the proposition that Congress's imposition of a time limit on a court does not offend the principles of separation of powers and that separation of powers is the key issue bearing on constitutionality of the 90–day provision of the PSLRA. *See* Docket No. 34 at 1; Docket No. 35 at 11; Docket No. 36 at 6–7.

A key fact, however, is that 30–day, 90–day, or 180–day time-limitations come in many shapes and forms and with quite varied substantive text as well as differences in the number of days stated. The substantive content of the 90–day clause of the PSLRA is materially different from the substantive content of the clauses involved in *Miller*, and is more relevant to the professional roles of decisionmakers than to the particular kind of time-limitation provisions involved in *Miller*.

In *Miller*, the Court states:

Finally, the prisoners assert that, even if § 3626(e)(2) does not fall within the recognized prohibitions of *Hayburn's Case*, *Plaut*, or *Klein*, it still offends the principles of separation of powers because it places a deadline on judicial decisionmaking, thereby interfering with core judicial functions. Congress' imposition of a time limit in § 3632(e)(2), however, does not in itself offend the structural concerns underlying the Constitution's separation of powers . . . . .

In contrast to due process, which principally serves to protect the personal rights of litigants to a full and fair hearing, separation of powers principles are primarily addressed to the structural concerns of protecting the role of the independent Judiciary within the constitutional design. In this action, we have no occasion to decide whether there could be a time constraint on judicial action that was so severe that it implicated these structural separation of powers concerns. The PLRA [Prison Litigation Reform Act] does not deprive courts of their adjudicatory role, but merely provides a new legal standard for relief and encourages courts to apply that standard promptly.

*Miller*, 530 U.S. at 349–50, 120 S.Ct. 2246.

The 90–day provision in the PSLRA is quite different from the PLRA provision considered in *Miller*. The PLRA provision in *Miller* explicitly specifies what the district court must order if the time period lapses without a ruling. *See id.;* 18 U.S.C. § 3626(e). The district judge has no choice, no discretion. In contrast, under the 90–day provision in the PSLRA the district judge is required to make a decision on the selection of lead plaintiffs. No Congressional mandate exists for what the judge must do. The statute thrusts upon the district court the responsibility for making a discretionary choice, but also mandates that that decision be made with-

in 90 days. In some cases it may be possible to comply with the Congressional mandate, but in the consolidated cases now before me it is impossible for me to comply with that mandate.

The roles of the Bench and Bar in the American legal system are professional. A professional represents interests of others in contrast with self-interests. A professional in law is ordinarily forbidden to allow self-interest to influence the professional's decisions and conduct in the course of performance of a professional function. Among the fundamental premises of the American legal system established by the Constitution of the United States are the propositions that members of the Bench and Bar must accept the duties and responsibilities of professionalism and that their independence in performing in their respective professional roles is constitutionally protected. These propositions are historically associated with James Madison's seminal thinking expressed publically and privately during debates over the structure of the new form of related state and national governments to be established under a constitution drafted in May 1787 to cure deficiencies in the Articles of Confederation (1777). Professionalism of persons educated in law, as it came to be recognized in the United States in the late nineteenth century and the early decades of the twentieth century, did not exist at the time of the Founders. Its development owed much to the thoughtful and incisive exchanges among James Madison of Virginia, Edmund Randolph of New York, and others who participated in those lively debates. *See generally* John P. Kaminski, Ph.D., Director, and Richard Leffler, Ph.D., Co–Director, The Center for Study of the American Constitution, The University of Wisconsin–Madison (Wisconsin Study), *The Origins of the Three Branches of Government,* Federal Judicial Center Traveling Seminar 3–9 (2001).

In the consolidated cases now before me, in order for me to comply with the 90–day provision in the PSLRA—to decide on a lead plaintiff or group of lead plaintiffs—I would be required to make an uninformed decision of a kind that a United States District Judge committed to professionalism is not permitted to make. *See* Robert E. Keeton, *Judging in the American Legal System* 5 (Lexis Law Publishing 1999).

A decision of the kind required, for the case before this court, by the provisions of the PSLRA, is a decision with respect to an appropriate lead plaintiff, or group of plaintiffs, who would be able to perform a special function of resistance to becoming a tool of others.

> These provisions of the PSLRA were designed to avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him. The PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.

*Sakhrani v. Brightpoint, Inc.,* 78 F.Supp.2d 845, 850 (S.D.Ind.1999). *See also Greebel v. FTP Software, Inc.,* 194 F.3d 185, 191 (1st Cir.1999).

On the record now before me, I do not have the information I need to make an informed decision whether the proposed lead plaintiffs can appropriately represent the putative class. Congress does not have the authority under the Constitution and laws of the United States to require a United States District Court to make a judicial decision without enough information before the court to make an informed and reasoned decision that can be candidly

explained on the informed and reasoned grounds through which the decision was reached.

In these circumstances, I am not now able to make this required decision about an appropriate lead plaintiff. I need, and will invite again, the benefit of submissions on behalf of the Attorney General of the United States, the Securities and Exchange Commission, and the Bar. I will defer ruling on The Nomanbhoy Group's Motion for Appointment as Lead Plaintiffs and for Approval of Their Selection of Lead and Liaison Counsel (Docket No. 11) in order to allow time for additional submissions responding to the concerns I have expressed in this Memorandum.

### Practice and Procedure Order No. 1

June ——, 2001

For the foregoing reasons, it is ORDERED:

1. Plaintiffs' Motion for Consolidation (filed January 19, 2001) is ALLOWED.

2. Until further notice, each document presented to the Clerk of the United States District Court for the District of Massachusetts in this proceeding is to have the same caption as this Procedural Order, followed by the descriptive caption of the document itself. The cases (including cases filed in this court and all transferred and consolidated actions) to which this Order applies, on the date of this Order, are the following:

D. MASS. C.A. No. 00–12398–REK (Chan v. PRI Automation, Inc., et al.)

D. MASS. C.A. No. 00–12414–REK (Siegal v. PRI Automation, Inc., et al.)

D. MASS. C.A. No. 00–12628–REK (Friedman v. PRI Automation, Inc., et al.)

D. MASS. C.A. No. 00–12637–REK (Fisher v. PRI Automation, Inc., et al.)

D. MASS. C.A. No. 01–10072–REK (Baum v. PRI Automation, Inc., et al.)

3. The court will defer ruling on The Nomanbhoy Group's Motion for Appointment as Lead Plaintiffs and for Approval of Their Selection of Lead and Liaison Counsel (Docket No. 11) in order to give the plaintiffs, their attorneys, the Attorney General of the United States, the Securities and Exchange Commission, and the Bar a reasonable time for further submissions that will be helpful in making a determination on the issues discussed in this Memorandum. These submissions are to be filed on or before July 20, 2001.

4. The next Case Management Conference is set for 3:00 p.m., July 24, 2001, but the court will consider any motion for rescheduling to a later time for good cause shown.